# George W. Evilhock et ux. *v.* Philadelphia, Harrisburg & Pittsburg Railroad Co., Appellant.

*Negligence—Railroads— Vice principal and colaborer.*

Plaintiffs' son was killed on a truck which was being pushed in front of a backing construction train used in laying track. The truck was an appliance used in laying rails, and it was being moved from one part of the work to another for that purpose, and not as a means of transportation for the workmen. Deceased was on the truck by direction of the foreman, for the purpose of aiding in moving it, and not for the purpose of being carried to his work. The court charged that the question for the jury to consider was whether the company had provided a reasonably safe conveyance to carry the boy to his work. *Held,* that the instruction was misleading; that the right of plaintiffs to recover depended on whether the foreman was a vice principal or colaborer, and that a judgment on a verdict for plaintiffs should be reversed.

Argued April 30, 1895. Appeal, No. 30, July T., 1894, by defendant, from judgment of C. P. Cumberland Co., Feb. T., 1892, No. 192, on verdict for plaintiffs. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass to recover damages for the death of plaintiffs' son.

At the trial, it appeared that plaintiffs' son, a minor, was employed by defendant company as a track layer. There was evidence which tended to show that Samuel Evans, an employee of defendant, had charge of the work where Evilhock was employed. On April 13, 1891, Evans together with Evilhock and other workmen loaded at Bowmansdale three gondola cars with ties, spikes, rails, etc., to take forward about two miles to the place of work. At this point Evans asked Supt. of the H. & P. Div. how many trucks or trollers were out at the point of work, and was told three. He said a fourth could be used to advantage and was told that one was standing near at hand along the track. Evans directed that it be placed on the track in front of the last car (the train thus made up of three gondolas, box car and engine was being backed down the track), but being too low, directed that a railroad tie be placed upon the floor of the truck so as to afford a purchase against the bull-nose of the rear car and thus propel it down to the point of work. The tie was kept in place by Evans standing on the troller with

one foot on it near the car and Evilhock sitting on the other end. The train and truck was propelled in this manner for some three fourths of a mile to a mile at a slow rate, not exceeding four to six miles per hour, and then for some cause the front end of the truck left the track and Evilhock was thrown under the wheels of the last gondola car and killed.

Plaintiffs' points were among others as follows:

" 7. The master is under an implied contract with those whom he employs, to adopt and maintain suitable instruments and means with which to carry on the business in which they are employed. This includes an obligation to provide a suitable place in which the servant, being himself in the exercise of due care, can perform his duties safely or without exposure to dangers that do not come within the reasonable scope of his employment. If, therefore, the jury believe that the troller on which Charles L. Evilhock was stationed and from which he was thrown and killed was unsafe, or that the method of propelling the same was unsafe and improper, and that he was an inexperienced employee of the Railroad Company, then the defendant is liable in damages for his death. *Answer :* If Evilhock was killed by reason of the unsafe condition of the troller, or on account of the unsafe and improper means of propelling the same, and there was no contributory negligence on his part, we think the plaintiffs may recover." [3]

" 10. If the jury believe that the troller was furnished by the defendant for use in the work of laying its railroad track; that it was unsafe or defective, and that by reason of its defects and unsafeness it was dangerous to use it in front of a train ; that Charles L. Evilhock was without experience in railroading; that he took position on the troller, and by reason of its unsafeness was thrown therefrom and killed, then their verdict must be for the plaintiffs. *Answer :* This point is affirmed, unless you find that Evilhock was made aware of the unsafe condition of the troller, or was directed by Mr. Evans to leave the troller and enter another car of the defendant." [6]

Defendant's points were among others as follows:

" 2. The fatal accident to the deceased did not occur while he was handling or using any of the machinery, tools or appliances supplied by his master, the defendant, for the purposes for which they were supplied, viz, track laying, but while on

his way with the construction train to the place of work, and therefore no evidence exists in the case that he was killed whilst making legitimate use of any such tool or appliance for the purpose supplied by the defendant, and in the usual course of his employment at the time of the accident. *Answer:* This point is refused as stated. We leave it for you to determine whether he, Evilhock, was directed by Evans to ride upon the truck and whether the truck was in a safe condition, or whether it was defective and unsafe, and whether, if defective or unsafe, the accident resulted therefrom. In other words, if this company defendant undertook to carry its employees to the place of their work, they were bound to provide ordinarily safe conveyance for them." [7]

"11. The evidence being undisputed that the company defendant was engaged in the undertaking of track laying and had furnished and supplied all tools, trollers and materials, and had actually entered upon and was in progress with the work when Mr. Evans arrived to act as foreman, and the evidence being also undisputed that Mr. Evans was a competent foreman, the company had performed the full measure of its duty, therefore, if the use of any such tool or appliance by the said Evans, selected by him, in a way and for a purpose not intended or designed by defendant in its work, and the fatal injury to said Evilhock arose from such use of said tool, by said Evans, the company is not liable and the verdict should be for the defendant. *Answer:* This point is refused. The company was bound to furnish safe appliances and instrumentalities for its employees, and if you should find that Evans was the representative of the company and put the troller on the track, which had the bent axle, and directed Evilhock to ride upon the same, and that the troller left the track by reason of its bent axle, and Evilhock was killed in consequence, then the plaintiffs may recover. Besides if the company undertook to transport its employees to the place of work, they were bound to furnish reasonably safe conveyance." [14]

The court charged in part as follows :

" [One of the chief contentions between the parties in this case has been, what relation did Evans bear to the defendant company? Was he, as it is represented, delegated with such unlimited authority by the defendant, in the matter of con-

struction of the railway as to make it, the company, responsible
for his defaults, or was he merely a fellow laborer, or employee,
charged with the duty of putting down the track? If Evans
held the position and had the authority contended for by the
plaintiffs, then the defendant would be responsible if his duties
were negligently discharged, and any one suffered harm thereby.
In other words, if the accident in this case was alone due to
the manner in which he, Evans, moved the troller, so that
Evilhock was killed thereby, and this conduct of his negligent
and reckless, and the appliance unsafe, the defendant may
properly be expected to respond in damages.

" But, if on the other hand, as is contended by the defend-
ant, Evans was merely sent there as a track layer to direct
or aid in putting down the track, and he was a mere fellow
servant, or colaborer, or coemployee, then the defendant would
not be responsible, although his, Evans's, negligence may have
been the cause of the accident which resulted in the death of
Evilhock. A fellow servant cannot look to his employer to be
compensated for harm that may come to him from the negli-
gence of his fellow laborer, unless it appear that the employer
was negligent in the discharge of his duties.

" Now, as we view this case, this question is not of the first
importance. The duty of the company defendant was to use
ordinary care and diligence, to provide safe working places for
those in its service. This duty rests upon the employer and
he cannot absolve himself from liability by delegating it to any
agent. In other words, if the company, defendant, undertook
to carry Evilhock to his place of work and provided a troller
which had a bent axle, and which was unsafe and dangerous,
then the question of coemployee is not important, because the
duty of the railroad company was positive to furnish a reason-
ably safe truck or conveyance, and if it delegated it to one,
however humble his position, he personally became the agent
of the company or representative of the company, and the com-
pany would be bound to respond in damages for his defaults.
The question as to whether Evans was really the representa-
tive of the company, or coemployee of the company defendant,
becomes a subordinate one. The question is, as we view it:
Did the company defendant furnish a reasonably safe convey-
ance to carry Evilhock to his place of work? Did it provide

a reasonably safe conveyance? If that way to propel it did not, and delegated it to another one, however, humble, it must respond in damages for any default, because its duty was positive to furnish a reasonably safe conveyance, and it cannot be excused by claiming, if it was unsafe, that its agent was at fault, and that he held a minor situation in the company.] " [17]

Verdict and judgment for plaintiffs for $1,400. Defendant appealed.

*Errors assigned,* among others, were (3, 6, 7, 14, 17) above instructions, quoting them.

*J. W. Wetzel,* for appellant, cited on the question of fellow servants: McGinley v. Levering, 152 Pa. 366; Crawford v. Stewart, 19 W. N. C. 48; Dealey v. P. & R. R. Co., 21 W. N. C. 45; Johnson v. Tow Boat Co., 135 Mass. 209; Capper v. Louisville R. R., 103 Ind. 305; O'Connell v. B. & O. R. R., 20 Md. 212; Spancake v. P. & R. R. R., 148 Pa. 184; Lehigh Coal Co. v. Jones, 86 Pa. 432; New York R. R. v. Bell, 112 Pa. 400; Kinney v. Corbin, 132 Pa. 341; Reiser v. Pa. R. R., 152 Pa. 38.

*A. G. Miller* and *John Hays,* for appellees, cited on the question of fellow servants: Mullan v. Phila. & Southern Mail Steamship Co., 78 Pa. 25; Del. & H. Canal Co. v. Carroll, 89 Pa. 374; Hass v. Philadelphia & Southern Steamship Co., 88 Pa. 269; Lewis v. Seifert, 116 Pa. 628; Trainor v. Phila. & Read. R. R., 137 Pa. 148; 7 Am. & Eng. Ency. of Law, 824; Gunter v. Graniteville Mfg. Co., 18 S. Car. 262; Crispin v. Babbitt, 81 N. Y. 516; McCosker v. Long Island R. R., 84 N. Y. 77; Brothers v. Carter, 52 Me. 372; Corcoran v. Holbrook, 59 N. Y. 517; Hannibal etc. R. R. v. Fox, 31 Kans. 586; Jones v. Phillips, 39 Ark. 17; Mullan v. Phila. & South S. M. S. Co., 78 Pa. 25; Indiana Car Co. v. Parker, 100 Ind. 191; Indianapolis etc. R. R. v. Morgenstern, 106 Ill. 216; Chicago N. W. R. R. v. Maranda, 108 Ill. 576; Shedd v. Moran, 10 Ill. App. 618; Holton v. Daly, 4 Ill. App. 25; Devine v. Tarrytown etc. Co., 22 Hun, 26.

As to the duty of the company to furnish safe appliances: Penna. & N. Y. Canal & R. R. v. Mason, 109 Pa. 296; Green & Coates St. Pass. R. Co. v. Bresmer, 97 Pa. 103; Phila. Wilt.

& Balt. R. R. v. Keenan, 103 Pa. 124; Tissue v. Balt. & Ohio R. R., 112 Pa. 91; Rummell v. Dilworth, 111 Pa. 343; Crissey v. Hestonville, etc. Pass. Ry., 75 Pa. 86; Baker v. Fehr, 97 Pa. 70; Penna. R. R. v. White, 88 Pa. 327; Fritsch v. City of Allegheny, 91 Pa. 226; Schum v. Penna. R. R., 107 Pa. 8; West Chester etc. R. R. v. McElwee, 67 Pa. 311; Fisher v. Ry. Co., 131 Pa. 292; Rummel v. Dilworth, 131 Pa. 509; Brownfield v. Hughes, 128 Pa. 194.

OPINION BY MR. JUSTICE FELL, JULY 18, 1895:

As this case was presented at the trial in the common pleas the right to recover depended upon the relation which the foreman in charge of the work and the laborer who was accidentally killed bore to each other. If they were fellow workmen there was no ground for the action; if the foreman was a vice principal the plaintiffs made out a case which entitled them to go to the jury. The question as to this relation was made subordinate, and expressly so, to the inquiry whether the defendant had provided safe means for carrying the workmen to their work. This inquiry did not arise in the case. The truck from which the deceased was thrown was not provided by the railroad company as a means of transportation for its workmen, nor was it used as such at the time of the accident. It was an implement or appliance used in laying rails, and the workmen were moving it from one part of the works to another for that purpose. Such trucks were generally carried on the cars, but because of its unusual weight this one was pushed on the track in front of the engine. At the time of his injury Evilhock was on the truck for the purpose of aiding in moving it, and not for the purpose of being carried to his work. The company had provided a train of cars, properly equipped and managed, to carry its workmen. No accident happened to this train nor was any one injured while riding on it. By the instruction complained of the attention of the jury was diverted from the real issue and directed to a false one.

Whether under the testimony Evans was a vice principal is not free from doubt. If the facts had been undisputed it would have been the duty of the court to decide the question and instruct the jury accordingly: McGinley v. Levering, 152 Pa. 366. As the testimony was not clear and uncontradicted it was

not error to submit it with proper instructions. It is to be hoped that upon a retrial the relations of the parties will be more clearly defined. The answers to the plaintiffs' points which are the subjects of the third, sixth and seventh assignments of error assume either that Evans and Evilhock were not fellow workmen or that the truck was furnished as a means of conveyance for the workmen. These assignments, together with the fourteenth and seventeenth, are sustained, and the judgment is reversed with a venire de novo.